Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, January 12, 2015 12:30:26 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                              )
                                    )
ARTHUR RAYMOND WEIDLICH,            )      Case No. 12-bk-1072
                                    )
        Debtor.                     )      Chapter 7

## MEMORANDUM OPINION

The Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Arthur Raymond Weidlich (the "Debtor") sold the Debtor's coin collection at auction with court approval but without proper notice under the Federal Rules of Bankruptcy Procedure. Shannon Weidlich, the Debtor's daughter and the administrator of the Debtor's death estate, requests relief from the court's order authorizing the Trustee to sell the coin collection and to unwind the auction sale so that she can preserve the Debtor's coin collection as a family heirloom.

For the reasons stated herein, the court will deny Ms. Weidlich's request.

### I. BACKGROUND

The Debtor filed a Chapter 13 bankruptcy proceeding on August 7, 2012. Shortly after proposing a Chapter 13 plan, the Debtor died. Unable to continue with a Chapter 13 plan, the Debtor's counsel met with Ms. Weidlich, the administrator of the Debtor's death estate, and filed a February 27, 2013 motion to convert the Debtor's case to one under Chapter 7. At that time, Ms. Weidlich's name and address were added to the Debtor's mailing matrix as a party-in-interest. On behalf of the Debtor, Ms. Weidlich also filed an amended claim of exemptions on February 27, 2013, which, among other things, reduced the Debtor's previous claim of exemption in the

1

Debtor's coin collection from $2,000 to $400.[1] At the time, Ms. Weidlich believed $400 was the approximate value of the entire coin collection.

On April 11, 2013, the Trustee convened a Chapter 7 meeting of creditors under 11 U.S.C. § 341 – presumably through the appearance of Ms. Weidlich. At or after the meeting of creditors, Debtor's counsel delivered the Debtor's coin collection to the Trustee. According to Ms. Weidlich, the parties had an oral understanding that the Trustee would only have the coins appraised – not sold.

On April 12, 2013, the Trustee, believing that the Debtor's Chapter 7 bankruptcy estate had assets, requested that the Clerk's Office issue a notice to creditors to file claims. That same day, the Clerk's Office issued the requested notice and mailed a copy to Ms. Wiedlich. By November 2013, the Trustee determined that the coins had value above the Debtor's $400 claim of exemption. On November 19, 2013, the Trustee filed the following document with the Bankruptcy Clerk's Office:

**MOTION TO EMPLOY AUCTIONEER**

Comes now . . . [the] Trustee in the above styled matter, [and] applies to the Court for authority to employ Darron Meares, of Meares Auction Group . . . as Auctioneer, to auction various coins.

. . . .

It is the Trustee's intent that said auctioneer be authorized to auction all of debtor's coins. The Trustee will make arrangements to have the coins delivered to the auctioneer. . . . Meares Auction Group will auction said coins as soon as it is possible.

. . . .

WHEREFORE, the Trustee prays that this Court authorize the employment of Darron Meares, of Meares Auction Group, upon the terms and conditions set forth hereinabove, that the sale would be free and clear of all liens and encumbrances with valid liens attaching to the proceeds of sale, that the Trustee be authorized to execute Bills of Sales conveying property to purchasers, that he be authorized to pay any reasonable costs, and that he be granted such other and further relief as is just and proper.

. . . .

**CERTIFICATE OF SERVICE**

---

[1] The Debtor's attorney e-filed the motion to convert and amended claim of exemptions for Ms. Weidlich. In doing so, the Debtor's attorney indicated that he provided legal representation to Ms. Weidlich. The Debtor's attorney has not formally entered an appearance on Ms. Weidlich's behalf and the court is unaware of the scope of representation between the Debtor's attorney and Ms. Weidlich. The Debtor's attorney has not assisted Ms. Weidlich in the matter presently before the court and it appears that Ms. Weidlich is acting *pro se*.

> I hereby certify that the foregoing MOTION TO EMPLOY AUCTIONEER was served upon the following individuals at the addresses listed below, by placing a true and correct copy thereof in the United States mail, postage prepaid, on the 19th day of November, 2013.
>
> Darron Meares
> . . . .
>
> Served electronically on:
> . . .
> Counsel for Debtor
>
> Office of the Assistant U.S. Trustee
> . . .

(Document No. 65).

Similar to the caption of the underlying document, the electronic filing event used by the Trustee was "Application to Employ" and the electronic docket text chosen by the Trustee's Office reads:

> Application to Employ Darron Meares, Meares Auction Group as Auctioneer for Trustee with Certificate of Service. Filed by . . . . (Attachments: # 1 Affidavit # 2 Proposed Order) . . . . (Entered: 11/19/2013).

On November 19, 2013, the Bankruptcy Clerk's Office issued a notice on the Trustee's document to the same parties listed on the Trustee's certificate of service allowing them 23 days from issuance of the notice to object to the proposed employment.[2] The Clerk's notice states:

> On November 19, 2013, the following document was filed:
>
> 65 − Application to Employ Darron Meares, Meares Auction Group as Auctioneer for Trustee with Certificate of Service. Filed by . . . .(Attachments: # 1 Affidavit # 2 Proposed Order) . . . .
>
> It is the responsibility of the moving party to ensure adequate service of the above−mentioned document. If you have not received service of the document, and believe that you are entitled to such service, you may contact the moving party. The aforementioned pleading is also on file in the office of the undersigned Clerk, and

---

[2] There is no stated requirement in the 11 U.S.C. § 327 or Fed. R. Bank. P. 2014 that a professional may only be employed after notice and an opportunity for a hearing. As a best practice issue, however, the Clerk issues notice to the United States trustee, the professional being employed, and e-filers who have made an appearance in the case.

you may review same during regular business hours of the Court.

YOU ARE FURTHER NOTIFIED that if you object to the Motion/Application, you must file your written objection with the Clerk of this Court before twenty−three (23) days from the date of this Notice. If you object, you should provide an explanation for the basis of your objection. If you are a business entity, any objection must be filed by an attorney. The Court, in its discretion, may grant or deny the relief sought based on the written contents of the above−mentioned document and any filed objection, or, if an objection is filed, may set the matter for hearing upon further notice by the Clerk to affected parties. A failure to timely file a written objection may result in the entry of an order that grants the relief sought in the document without further notice or hearing.

Date of Issuance: 11/19/13

(Document No. 66).

When the Bankruptcy Clerk's Office did not receive a timely objection to the Trustee's document, the court signed the Trustee's proposed order:

### ORDER AUTHORIZING EMPLOYMENT OF AUCTIONEER

This day came . . . [the] Trustee, pursuant to his "Motion to Employ Auctioneer" heretofore filed herein, upon consideration of which, it is ORDERED that . . . [the] Trustee, is authorized to employ Darron Meares, of Meares Auction Group, duly licensed to sell and auction property in the State of South Carolina, to sell the various coins of the Debtor, to pay compensation from the proceeds derived from said auction at a commission arrived at through computation from the following schedule:

. . . .

[A]nd that the sale would be free and clear of all liens and encumbrances with valid liens attaching to the proceeds of sale, and that the Trustee be authorized to pay any reasonable costs which may be incurred.

(Document No. 71).[3]

---

[3] The sale notice did not comply with Fed. R. Bankr. P. 2002(a)(2), (c)(1) and 6004(c). Because the sale notice is defective, the court should not have entered its order approving the sale. The court also notes that the notice on the application for compensation (or lack thereof) is only proper by post-auction happenstance as no notice is required when compensation is less than $1,000. Fed. R. Bankr. P. 2002(a)(6). Had notice been required, the notice could not have complied with Rule 2002(c)(2) because it could not, in advance, identify the amount requested. Thus, when trustees attempt to bundle hire, sell, and compensate proceedings in a single document, the notice required for that document, per force, will never fully comply with the Bankruptcy Rules. Likewise, the court's order awarding compensation is defective because it does not identify the amount awarded. This is important because the Clerk must maintain a public record listing fees awarded by the court to professionals employed by trustees. Fed. R. Bankr. P. 2013(a). This report is auto-populated when the court enters an order awarding compensation. Unless

4

Ms. Weidlich never personally received, at her home address, the Trustee's "Motion to Employ Auctioneer," the Bankruptcy Clerk's Notice,[4] or the court's "Order Authorizing Employment of Auctioneer." On February 11, 2014, Darron Mears Auction Group segregated the Debtor's coin collection and sold lots to twenty-two different bidders collecting a total of $3,103. After learning the Debtor's coin collection was sold at auction without her knowledge, Ms. Weidlich, *pro se*, wrote to the court on April 28, 2014, stating, among other things:

> I . . . feel that this case has not been properly communicated to myself as the representative of my fathers estate. . . .
>
> The only issue is one of the coin collection being liquidated. My father originally tried to keep it exempt with a value of him of $2,000 . . . . I had my lawyer revise the items to be exempted due to a number of items being stolen and over estimated. . . . We (my brother and myself), understood that we were under a verbal agreement to have it sent off to have it appraised NOT LIQUIDATED. I did not want money for the coins, I wanted it back. . . I **trusted** they would give me a fair valued appraisal of the coins to know how much to exempt. . . . [T]hey were not to sell them. . . We were under a verbal agreement to send it off to have **it appraised NOT LIQUDATED**. . . .
>
> The only time I heard anything about the coin collection is when I receive a check for $400 accompanying a letter telling me that the check was for my exempted part of the coin collection. I received the letter in the mail from [Debtor's counsel], the check was addressed to my father c/o me . . . . I did not get notice of the coin collection being appraised, ordered to be sold, and liquidated. . . I received no notices at all . . . just a check with a letter telling me what the check was for . . . I DID NOT WANT THE COIN COLLECTION SOLD . . . .
>
> I did not get notice of the value assessed on it, no notice or request to object or exempt it for value . . . nothing but a notice that it had been sold . . . .
>
> This is not a bunch of pennies . . . It is our family inheritance . . . .
>
> I want to get my father's coin collection back. I would have and could have made a check out to the estate to compensate for the value of the coin collection and this is all I want to do is buy it back. . . I did not get notification of it even being valued, let alone being put up for sale and being sold. . . .
>
> I am responsible for my fathers estate and want to get the coin collection back for my family.

---

the amount of compensation is set forth in the court's order, the Clerk's ability to compile an accurate record is thwarted.

[4] A sale of property of the estate by the Trustee is required to be on notice to all parties-in-interest under Fed. R. Bankr. P. 2002(a)(2). Because Ms. Weidlich is listed on the Debtor's mailing matrix, the Clerk's Office should have mailed her a notice of the proposed sale – at her listed address – as required by Rule 2002(a)(2). Under ordinary circumstances, she would have received the Clerk's notice even if an attorney had formally entered an appearance on her behalf.

(Document No. 87) (emphasis in original, grammar and syntax errors in original).

In a letter from the Debtor's counsel to Ms. Weidlich dated August 5, 2014, the Debtor's counsel related that parties-in-interest were not informed of the bankruptcy sale, but, "[u]nfortunatley, I am your attorney so that counts as notice . . . ." (Document No. 87).

## II. DISCUSSION

The Trustee, the Clerk, and the court failed to comply with Fed. R. Bankr. P. 2002(a)(2), (c)(1), and 6004(c) because, at a minimum, the notice of the Trustee's proposed sale of the Debtor's coins was not issued to all parties-in-interest.[5] However, in determining whether the court can grant relief to Ms. Weidlich from its order authorizing the Trustee to sell the Debtor's coin collection, the court must determine if a ground exists to avoid the court's order under Fed. R. Civ. P. 60, as made applicable to this case by Fed. R. Bank. P. 9024.

The court has broad discretion in ruling on a Rule 60(b) motion, which is to be given a liberal construction so as to prevent injustice. *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 755 (8th Cir. 1996). Under Rule 60(b), a court may grant relief from judgment for:

(1)   mistake, inadvertence, surprise, or excusable neglect;
(2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4)   the judgment is void;
(5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

---

[5] The bankruptcy rule-based process rights were violated due to a combination of factors: (1) the Trustee's disguised attempt to bundle an application to employ with a motion to sell and application for compensation; (2) the Clerk's failure to investigate beyond the caption and e-filing event of the document to recognize that the substance of the document was more than what it purported to be; and (3) the court's failure to recognize upon entry of the order that more was being authorized than what was presented in the order's caption and that an improper procedure had been employed under the Bankruptcy Rules before submitting the proposed order to the court for adjudication. The court further notes that had the Trustee's motion been recognized as a sale motion under 11 U.S.C. § 363(f), the motion was missing the information required for the Clerk to comply with the notice requirements found in Fed. R. Bankr. P. 2002(c)(1). The court and Clerk's Office encourage attorneys to submit their specialized notices of sale along with any motion to sell.

Although Ms. Weidlich does not articulate a specific grounds under Rule 60(b) to obtain relief from judgment, the court interprets her letter to request relief under Rule 60(b)(4) on the grounds that the court's judgment authorizing the Trustee to sell the coins was void due to lack of proper notice under the Federal Rules of Bankruptcy Procedure.[6]

"Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 272 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). As stated by the Supreme Court of the United States:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonabl[e] to convey the required information and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.

*Mullane*, 339 U.S. at 314-15; *see also Bd. of Regents v. Roth*, 408 U.S. 564, 578 (1972) (holding that abstract concerns (such as an extension of an employment term) are not property interests sufficient to require procedural due process).

---

[6] The court has considered Fed. R. Civ. P. 60(b)(6). That rule only applies "when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b)." 12 *Moore's Federal Practice* § 60.48 (Matthew Bender 3d Ed. 2014). Because Ms. Weidlich's complaint fits within Rule 60(b)(4), the court will not consider Rule 60(b)(6) as an alternative grounds for seeking relief from judgment. The court has also considered Rule 60(b)(3), but finds no grounds to avoid the judgment for fraud, misrepresentation, or misconduct. Even assuming that Ms. Weidlich and the Trustee had an oral agreement to have the Debtor's coins appraised – not sold – the notice of sale, is a sufficient communication to Ms. Weidlich that the Trustee desired more than an appraisal. Although the notice was not mailed to Ms. Weidlich's personal address, the Debtor's attorney actually received notice of the sale, and the Debtor's attorney wrote Ms. Weidlich a letter stating that he was acting as her attorney in this regard and that notice to him constituted notice to her.

7

A defect in applicable rule-based procedures does not necessarily violate constitutional due process rights sufficient to make a judgment void under Fed. R. Civ. P. 60(b)(4).  *See United Student Aid Funds, Inc.*, 559 U.S. 260 (finding that the debtor failed to issue a summons and complaint as required by the Bankruptcy Rules to discharge a student loan, but holding that the student loan creditor's constitutional due process rights were not violated because the creditor received notice of what the debtor intended to do when it received a mailing of the debtor's proposed Chapter 13 plan).  Accordingly, to obtain relief from judgment under Rule 60(b)(4) based on lack of notice, the moving party must demonstrate that the lack of notice violated a due process right guaranteed by the United States Constitution – not a merely right to receive notice that is created by a rule of procedure.

In this case, all parties-in-interest were entitled to notice of the sale of the Debtor's coin collection under the Bankruptcy Rules, but there exists a failure to comply with this notice requirement.  Thus, the court must determine what property interest is at stake and whether the lack of a notice mailed to Ms. Weidlich's address (or to other parties-in-interest) violated a right to due process such that the court's order authorizing the Trustee to sell the Debtor's coins may be avoided under Fed. R. Civ. P. 60(b)(4).  *See Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) ("In order for the plaintiffs to succeed on their procedural due process claim, they are obliged to show (1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate.") (citation omitted).

Importantly, Ms. Weidlich has not demonstrated any present, cognizable property interest in the Debtor's coin collection.  She is not a creditor or lien holder.  The coin collection is property of the Debtor's bankruptcy estate and the Trustee had the option to sell that property and pay the Debtor the monetary value of his claimed exemption without the Debtor's (or Ms. Weidlich's) consent.  11 U.S.C. §§ 363(b), 541(a)(1), 704(a)(1)  Moreover, as of the Debtor's bankruptcy petition date, he claimed assets totaling $111,893.00 and the filed proofs of claim in the Debtor's case total $418,792.72; consequently, there is unlikely to be any return to the Debtor once the Trustee distributes money to estate creditors.  As the administrator and potential heir to

8

the Debtor's death estate, Ms. Weidlich can have no greater interest in the coins than the Debtor.[7] Here, the Debtor has no property interest in the coin collection beyond the amount of his claimed $400 exemption, which has been paid to his death estate.

The only other interests that Ms. Weidlich holds regarding the coin collection are abstract concerns. She asserts the right to seek an amendment of the Debtor's claim of exemptions and the right to participate in an auction sale. Ms. Weidlich also states that the Trustee had an obligation to inform her of the value of the Debtor's coin collection so that she may be better informed about the Debtor's claim of exemption.

Ms. Weidlich, however, exercised the right to assert an amended exemption. She reduced the Debtor's claimed exemption in the coins from $2,000 to $400 after his death. She also had the right to participate in the auction sale (although she was not personally noticed of the time and place of the sale). Regarding the right to an appraisal, it is the obligation of a bankruptcy debtor to estimate the value of property and assert the amount of a claimed exemption. The Trustee has no obligation to appraise property for a debtor's benefit or to advise a debtor (or the administrator of a death estate) on an exemption claim that would be sufficient to cause the Trustee to abandon the property. *Schwab v. Reilly*, 560 U.S. 770 (2010). Accordingly, the court does not believe that Ms. Weidlich holds a sufficient property interest in the coin collection such that it is constitutionally protected from deprivation without due process of law.

In addition, as the Advisory Committee Note to Rule 2002 clarifies, the purpose of providing notice under Rule 2002 to all parties-in-interest is to "afford creditors an opportunity to object to the sale and raise a dispute for the court's attention." Ms. Weidlich is not a creditor and does not state that the sale of the Debtor's coin collection could never occur, only that she desired greater participation so that she could address her concerns: amending exemptions and bidding at a sale in hopes of preserving the Debtor's former property as a family heirloom. Thus, even if Ms. Weidlich had lodged a timely objection to the Trustee's proposed sale, nothing she reported in her letter to the court would have caused the court to ultimately prohibit an auction of the

---

[7] *See Murphy v. E. Am. Energy Corp.*, 680 S.E.2d 110, 119 (W. Va. 2009) (holding that a "personal representative of the decedent's estate may assert a . . . claim against a [defendant] . . . so long as the decedent could have maintained the action . . . .").

9

Debtor's coin collection.[8]

Finally, regarding other parties-in-interest in the Debtor's bankruptcy case, the court is unaware that any lien rights exist in the Debtor's coin collection or that other parties-in-interest would have an interest in the coin collection that is any greater than what Ms. Weidlich has asserted.

### III. CONCLUSION

For the above-stated reasons, the Court will deny Ms. Weidlich's request for relief from the court's order authorizing the sale of the Debtor's coin collection.

---

[8] *See, e.g.*, *S. Motor Co. v. Carter-Pritchett-Hodges, Inc. (In re MMH Auto. Group, LLC)*, 385 B.R. 347, 372 (Bankr. S.D. Fla 2008) (finding that a billboard lessor failed to receive notice of the trustee's proposed sale as required by Rule 2002(a), but upholding the validity of the sale order on the basis that – had notice been given – the sale would have been authorized over the lessor's objection).   A trustee's decision to sell property of a bankruptcy estate is reviewed under a business judgment standard.  *E.g.*, *In re Merry-Go-Round Enterprises v. Simon Debartolo Group*, 180 F.3d 149, 162 (4th Cir. 1999) ("The 'purpose of a Chapter 7 case is to administer efficiently the liquidation of the estate for the benefit of the creditors.' To accomplish this often seemingly impossible task, the Chapter 7 trustee requires considerable discretion. 'This discretion is reviewable by a bankruptcy court . . ., but so long as the trustee acts reasonably and in the best interests of the estate, and so long as she obtains fair value for the property under the circumstances of the case, her choice of method of disposition will be respected.'") (citations omitted).